UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RYAN PHAN,**<br>　　　Plaintiff,<br>　vs.<br>**COSTCO WHOLESALE CORPORATION,**<br>　　　Defendant. | CASE NO. 19-cv-05713-YGR<br><br>**ORDER GRANTING IN PART SPOLIATION MOTION AND IMPOSING SANCTIONS**<br><br>Re: Dkt. No. 27 |

Now before the Court is plaintiff Ryan Phan's spoliation motion and motion for imposition of sanctions against defendant Costco Wholesale Corporation pursuant to Federal Rule of Civil Procedure 37(e). Having carefully considered the papers submitted and oral argument, and for the reasons set forth more fully below, the Court **GRANTS** the motion in part.

**I.    BACKGROUND**

On or about October 15, 2017, plaintiff was at the Costco Gasoline Station in San Leandro, California, when he slipped and fell, allegedly sustaining injuries. There were no eyewitnesses to the fall. Thereafter, defendant's employees took an incident report, several managers were called to the scene, and an ambulance took plaintiff to the emergency room, where he underwent surgery. Plaintiff contends that he slipped on wet paint, while defendant asserts that the fall occurred as a result of gasoline spilled by plaintiff himself.[1]

---

[1] Plaintiff represents that an employee on the scene informed him that the area around where he had fallen had just been painted. Defendant points out that plaintiff also testified at his deposition that he had parked next to a gas pump that was on the opposite side of the car from his gas tank; pulled the hose around the back of his car and inserted the nozzle into the tank; the nozzle of the gas pump fell out; and plaintiff fell while bending over to pick up the nozzle that was still ejecting gasoline. Defendant also asserts that plaintiff told the responding paramedic and his primary care physician that he slipped on gasoline, and a witness saw plaintiff's gas nozzle inserted upside down in the vehicle before it fell out. Further, defendant represents that no painting had taken place at the gas station for more than a year before the incident.

At the time of the incident, defendant proffers that it operated surveillance cameras through the "Exacqvision" network video surveillance system, which included surveillance cameras in and around the gas station. The software recorded and saved all footage for up to 30 days, after which the system recorded over previous footage not saved to an external hard drive, DVD, thumb drive, or other form of digital media storage. Defendant asserts that on the day of the incident, Costco's Loss Prevention Agent, Juan Silva, copied video footage of the fall and saved it to an external hard drive to avoid the system recording over the footage. Silva represents that he had done this many times before and believed that he had properly saved the footage. He further represents that he watched the video the next day.

Just over two months later, plaintiff's counsel sent an evidence preservation letter to defendant. Plaintiff also sent multiple letters requesting video of the incident. Upon receiving the letters, defendant asserts that Costco's Assistant Manager searched all of Costco's thumb drives, DVDs, and hard drives, including desktop folders on the warehouse's server, but was unable to locate any video footage of the incident. This was communicated to plaintiff's counsel.[2]

Defendant's counsel states that on May 6, 2020, while preparing for the deposition of the manager on duty when the slip-and-fall occurred, it learned, for the first time, that there once had been video footage of the fall. The deponent later testified that he had watched the footage. After the deposition, plaintiff sent a letter to defendant highlighting this testimony and requesting that the video evidence be produced. Defendant purportedly undertook efforts to locate the video footage, including searching again through thumb drives, DVDs, and hard drives. Defendant located a hard drive on which it was believed Silva had saved the footage, but that hard drive was no longer in use. Defendant then retained a third party, BlackStone Discovery, to perform a forensic analysis of the hard drive to locate the missing footage. BlackStone could not locate the video footage, any evidence of its existence, or any evidence that anyone had deleted the video from the hard drive. Defendant informed plaintiff that the video could not be located.

---

[2] After litigation commenced, plaintiff sought video evidence during initial discovery. Defendant again indicated that no video of the incident existed.

1    Plaintiff now moves for an order (1) finding that defendant destroyed pivotal evidence that
2    was unfavorable to defendant; (2) barring defendant from furthering the theory that plaintiff
3    slipped and fell on gasoline; (3) imposing monetary sanctions in an amount deemed fair and
4    appropriate; (4) entering default judgment against defendant; and/or (5) imposing any other
5    sanctions deemed fair and appropriate.

## II.   LEGAL STANDARD

Rule 37(e) provides for the imposition of sanctions for spoliation of electronically stored information, when information that "should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Upon a finding that these criteria have been met and there was prejudice to another party, a court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). If the criteria have been met and "the party acted with the intent to deprive another party of the information's use in the litigation," the court may "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action to enter a default judgment." Fed. R. Civ. P. 37(e)(2). Sanctions for violations of Rule 37(e)(1) may be imposed for negligent conduct. *Keithley v. Home Store.com, Inc.*, No. C-03-04447 SI (EDL), 2008 WL 3833384, at *3 (N.D. Cal. Aug. 12, 2008). However, Rule 37(e)(2) requires "intent," which means the evidence shows, or it is reasonable to infer, that a party purposefully destroyed evidence to avoid its litigation obligations. *Porter v. City & Cty. of San Francisco*, No. 16-CV 03771-CW(DMR), 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018) (citing cases).

## III.   ARGUMENT

### A.   The Video Should Have Been Preserved

"[T]he duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F.Supp.3d 1040, 1051 (S.D. Cal. 2015). Whether "litigation is 'reasonably foreseeable' is a flexible fact-specific

3

standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 549 (N.D. Cal. 2018) (quoting *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)).

Plaintiff argues that the video footage was pivotal and material evidence that should have been preserved because it answered a central question in the case: What caused plaintiff to fall? Plaintiff further contends that defendant's duty to preserve the video attached at the time of the incident, when defendant was on notice that a significant injury had occurred on its property. While defendant does not directly dispute these contentions, it attempts to minimize the importance of the video to plaintiff's theory of the case, arguing that it would not have shown whether any paint near plaintiff was wet at the time of the fall.

It is reasonable to think that the video would have shed significant light on the cause of the fall. Indeed, employees who viewed the footage testified about the conclusions they drew from it, suggesting it offered a reasonably clear view of the incident. Further, given that defendant took an incident report and plaintiff was taken away in an ambulance, defendant reasonably should have known the video would be relevant to potential litigation, and thus, had a duty to preserve it. This factor is satisfied.

**B.     The Video Was Lost Because Defendant Failed to Take Reasonable Steps to Preserve It**

Plaintiff argues that the video footage was lost because defendant failed to take reasonable steps to preserve it. Defendant contends that the video was "somehow lost," but it argues that the loss occurred despite its reasonable efforts. In defending its efforts, defendant points to evidence that Silva deliberately located the footage on the day of the incident, extracted it from the system that would record over it in 30 days, and saved it to a hard drive as he had done many times before. Defendant further avers that Silva's belief that he properly saved the video was reasonable because he watched the video the following day.

Even if Silva's process was reasonable up to the point of saving the video footage on the hard drive, which the Court has no reason to doubt, there is no evidence that defendant took

reasonable steps to *preserve* the evidence, i.e., maintain it in a secure place where it could be located at a later date. Said another way, defendant does not provide any explanation for what happened to the video after it was saved to the external drive. How and where was it stored? Has video footage ever disappeared from an external drive before? Why was defendant unable to find the hard drive when plaintiff initially asked for it, but later, found what it believed was the relevant hard drive? Here, the absence of evidence of a proper process for preserving this important evidence indicates, at a minimum, that defendant was careless. This factor is satisfied.

### C. The Video Cannot Be Restored or Replaced Through Additional Discovery

Defendant avers that even if the video was lost because of a failure to take reasonable steps, the events seen on the surveillance footage are replaceable. Defendant contends that plaintiff witnessed his own fall and has testified regarding the circumstances in which it occurred. Further, defendant argues the merits of the claim as a way of suggesting the video is replaceable, asserting that it has produced reliable and undisputed evidence that there was no wet paint at the gasoline station and plaintiff slipped on gasoline.

This factor, too, is satisfied. There were no other eyewitnesses to the fall, except plaintiff, who experienced it. Further, plaintiff and defendant's employees who saw the video were deposed years after the incident itself. Memories fade and deponents may be biased in their recollections. Testimony cannot replace a video that would have shown, objectively, the circumstances that led to plaintiff's fall, or perhaps allowed an expert in accident reconstruction to opine on the mechanics of the fall. Defendant does not point to any evidence that would replace entirely the value of the video evidence in this case.[3]

### D. Plaintiff Was Prejudiced

The parties disagree as to whether there was prejudice, and if so, whether defendant was as prejudiced as plaintiff by the loss of the evidence. Specifically, defendant contends that plaintiff was not prejudiced because the video could not prove that plaintiff slipped on wet paint, and indeed, defendant could have prevailed by establishing that plaintiff slipped on gasoline.

---

[3] Nor can the video be restored. Defendant explains that despite extensive efforts, including retaining a forensics expert, it has not been able to locate the video.

Defendant's argument goes to the merits of this case. It would be inappropriate for the Court to determine the cause of plaintiff's fall solely to reach a decision regarding the prejudicial effect of the video. However, as explained, the video is important evidence. Plaintiff sought the video evidence numerous times throughout the litigation. Moreover, while defendant may rely on evidence from employees who saw the video and have provided testimony to support defendant's theory of the case, plaintiff only has his account of the incident. The loss of critical evidence that plaintiff reasonably believes would have furthered his case supports a finding that the loss of the video had a prejudicial effect on plaintiff.

Because the above-referenced factors have been satisfied, the Court may impose sanctions under Rule 37(e)(1).

### E. Defendant Did Not Act with Intent to Deprive Plaintiff of the Video's Use

Next, the Court must address whether defendant acted with an intent to deprive plaintiff of the video's use in this litigation, such that the Court may impose the more severe sanctions set forth in Rule 37(e)(2).

Plaintiff argues that "it can be inferred" based on "the totality of the circumstances" that defendant intentionally deleted the surveillance video despite its obligation to preserve it and intentionally misrepresented for two years of litigation that no footage existed. There is no actual evidence of intent, however. Defendant's employees have represented that they did not delete the video. Defendant took the step of engaging a forensic expert to try to locate the video from a hard drive. Further, while defendant and its counsel arguably should have made greater efforts to identify the video when plaintiff first requested it, this failure indicates sloppiness, but not necessarily intent. As such, the Rule 37(e)(2) factors are not satisfied.

### F. Sanctions Under Rule 37(e)(1)

There are two forms of sanctions addressed in the briefs that appear available under Rule 37(e)(1). First, plaintiff requests monetary sanctions in an amount the Court deems appropriate. However, plaintiff does not suggest an amount, let alone provide evidentiary support for the request. The Court will not award monetary sanctions in a vacuum. Nor will the Court entertain plaintiff's request at the hearing on the motion to supplement the record. Local Rule 37-4 requires

6

a party moving for Rule 37 sanctions to "[d]escribe in detail the efforts made by the moving party to secure compliance *without intervention by the Court*" and "[i]f attorney fees or other costs or expenses are requested, itemize with particularity the unnecessary expenses . . . directly caused by the alleged violation or breach, and set forth an appropriate justification for any attorney-fee hourly rate claimed." (Emphasis supplied.) Plaintiff has failed to comply. Not only were any efforts made to agree-upon an appropriate sanction, but the required evidentiary showing was not made. Monetary sanctions are not warranted.

Second, defendant argues that if the Court is inclined to impose some sanction, it could instruct the jury on Willful Suppression of Evidence (CACI 204). This instruction states:

> You may consider whether one party intentionally concealed or destroyed evidence. If you decide that a party did so, you may decide that the evidence would have been unfavorable to that party.

The Court finds this instruction to be an appropriate sanction, which balances the importance of the video evidence with the degree of defendant's fault and extent of prejudice to plaintiff. Further, the instruction allows the factfinder to reach its own conclusion about the video evidence in light of all the facts that may be presented. Thus, the Court should consider sanctioning defendant by instructing the jury on CACI 204.

**IV.   CONCLUSION**

For the foregoing reasons, the Court **GRANTS** plaintiff's motion in part. The Court further **ORDERS** that defendant shall be sanctioned with an instruction to the jury on CACI 204. The request for monetary sanctions is denied.

This Order terminates Docket Number 27.

**IT IS SO ORDERED.**

Dated: August 24, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**